

**NUMBER 13-06-00538-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF D.A.A., A CHILD

**On appeal from the 275th District Court of Hidalgo County, Texas Sitting as a Juvenile Court.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

D.A.A., a juvenile, appeals his conviction for burglary of a building.  *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon 2003).  The trial judge placed D.A.A. on probation at the Gulf Coast Trades Center until his eighteenth birthday and ordered him to pay restitution. On appeal, D.A.A. argues that (1) the trial court improperly considered accomplice witness testimony, which was not corroborated; (2) the trial court erred in allowing the hearsay testimony of Bedelia Lopez; and (3) the evidence was legally and factually insufficient to support the verdict.  We affirm.

## I. BACKGROUND

On March 22, 2005, Officer Alberto Ponce responded to a report of the burglary of a house owned by Jerry Perez in Weslaco, Texas. The house was unoccupied at the time but had recently been renovated and was under contract for sale. The interior of the house suffered extensive damage: almost every wall was broken through, doors were broken and taken off their hinges, mirrors were broken, a window was broken, and there was writing on some of the walls.

While writing his report of the incident, Officer Ponce received a phone call from his fiancé, Bedelia Lopez, informing him that she had some information regarding a burglary. Lopez told Officer Ponce that G.L., a five-year-old neighbor with whose mother Lopez was friends, had come to Lopez's house after school, very upset, crying, and asking whether a boy his age could go to jail. Lopez told G.L. that she would take care of it by calling Officer Ponce. Lopez called Officer Ponce, who was unavailable because he was writing the police report. Lopez told G.L. that Officer Ponce could not talk to him at that time because he was working. G.L. said he already knew Officer Ponce was working because he had seen him investigating the scene at Perez's house. G.L. told Lopez that he, his brother D.A.A., and a friend named "Chris"[1] had gone into the house. G.L. explained that D.A.A. and Chris had "messed up the walls," and his other brother D.A. was sick at home at the time.

Perez subsequently had the house repaired. He made frequent trips to the house after the burglary to ensure it was safe. Perez also installed a security alarm to deter any

---

[1] The record never makes it clear who Chris is or whether he is a minor or an adult.

2

future burglaries. The same day the alarm was installed, it was set off when someone tried to enter the house. When Perez and the police arrived at the property, he saw D.A.A., who commented to Perez that when he heard the alarm, he ran away from the house. Perez found this comment to be quite suspicious.

After a lengthy investigation, including multiple efforts by investigators to contact D.A.A.'s mother to bring in D.A.A. because he was a suspect in the burglary, D.A.A. was finally brought to the station to be charged with the crime. D.A.A. was charged with burglary of a habitation on February 16, 2006. However, on April 18, 2006, this charge was changed to the lesser included offense of burglary of a building.

D.A.A. waived his right to a jury trial. Therefore, the trial judge of the Hidalgo County Juvenile Court acted as the sole fact finder in a bench trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (Vernon 2005); *see also Aldridge v. State*, 482 S.W.2d 171, 174 (Tex. Crim. App. 1972).

At trial and over the objection of D.A.A.'s attorney, the judge allowed the testimony of Lopez, reciting G.L.'s statement, to be admitted. G.L.'s actual testimony was vague, contradicted Lopez's recitation, and seemed to contradict itself as well. While G.L. testified that he did not remember much of what happened in the house, he stated that it was only he, his other brother D.A., and his brother's friend Chris who entered Perez's house and that D.A.A. was not present at the time of the crime. G.L. later testified that D.A.A. was present at the house, but G.L. did not see D.A.A. G.L. stated that he merely heard D.A.A.'s voice telling D.A. and Chris to leave the house. Finally, G.L. testified that he did in fact see D.A.A. present in the house but that D.A.A. did not damage the house. G.L. also testified that the destruction of Perez's house shown in the evidence was much worse

3

than the "little holes" he saw in the walls when he was in the house.  However, G.L. also testified that it must have been D.A. and Chris who destroyed the inside of the house, either before or after the time G.L. was present at the house.

After the bench trial, the trial court entered a judgment of "true"[2] to the offense of burglary of a building.  The trial court found that D.A.A. was in need of rehabilitation, placed him on probation at the Gulf Coast Trades Center until his eighteenth birthday, and ordered payment of restitution in the amount of $15,000.  This appeal ensued.

## II. WHETHER G.L.'S STATEMENT TO BEDELIA LOPEZ WAS SUBJECT TO THE ACCOMPLICE WITNESS RULE

In his first issue, D.A.A. argues that, because G.L. should be considered an accomplice to the crime, G.L.'s statement to Lopez implicating D.A.A. is subject to the accomplice witness rule and must be corroborated by additional evidence.

### A.    Law Governing Accomplice Witnesses

Under the Texas Code of Criminal Procedure, a defendant cannot be convicted of a crime based solely on the testimony of an accomplice unless that testimony is "corroborated by other evidence tending to connect the defendant with the offense committed."  TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).  "An accomplice participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state."  *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).  There must exist sufficient evidence to connect the alleged accomplice

_____

[2] *See* TEX. FAM. CODE ANN. § 51.01(2)(B) (Vernon 2008) (noting that the Juvenile Justice Code is to be interpreted in a manner which removes, "where appropriate, the taint of criminality from children committing certain unlawful acts  . . ."; *see also* 29 THOMAS S. MORGAN & HAROLD C. GAITHER, JR., TEXAS PRACTICE: JUVENILE LAW AND PRACTICE § 218 (1999) (noting that a juvenile must plead "true" or "not true" in an adjudication hearing as opposed to "guilty" or "not guilty" because "'guilty' has a criminal connotation, which is prohibited.").

to the offense as a "blameworthy participant." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). In other words, the accomplice's participation must include an affirmative act that furthered or promoted the commission of the offense for which the accused is charged. *Paredes*, 129 S.W.3d at 536. Mere presence at the scene of the offense is not sufficient to make an individual an accomplice. *Cocke*, 201 S.W.3d at 748.

"A witness may be an accomplice as a matter of law or as a matter of fact; the evidence in the case determines what jury instruction, if any, needs to be given." *Id.* at 747. If the evidence clearly shows that "the witness has been, or could have been, indicted for the same offense" as the accused, then the witness is an accomplice as a matter of law. *Id.* There is then no need to leave to the fact finder any instruction defining the term "accomplice." *Id.* at 748. "If, however, the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the [fact finder] must first determine whether the witness is an accomplice as a matter of fact." *Id.*; *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). The trial court is under no obligation to give the fact finder "an accomplice-witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact." *Id.*

## B. Discussion

If a juvenile is under the minimum age requirement for a crime, then the juvenile cannot be held criminally responsible for his actions. *Alberty v. State*, 250 S.W.3d 115, 118 (Tex. Crim. App. 2008); *see* TEX. PENAL CODE ANN. § 8.07(a) (Vernon Supp. 2008). "[U]nless the juvenile court waive[s] jurisdiction and certifie[s] [a juvenile] for criminal prosecution as an adult," with limited exceptions not applicable here, a juvenile cannot be held responsible for crimes "committed while he is under the age of 15." *Alberty*, 250

S.W.3d at 118; *see* TEX. PENAL CODE ANN. § 8.07(a). The Texas Family Code grants exclusive and original jurisdiction to the juvenile court over an individual considered a "child" at the time of the offense. TEX. FAM. CODE § 51.04(a) (Vernon 2008). A "child" is defined as a person who is ten years or older and under seventeen years of age. TEX. FAM. CODE § 51.02(2)(A) (Vernon 2008).

At the time of the offense, G.L. was five years old, which is below the age requirements to be classified as a "child" within the State's juvenile court jurisdiction. Without jurisdiction over G.L., a juvenile court could not waive jurisdiction over G.L. and certify him for trial as an adult; therefore it is not possible for the State to convict G.L. of the same or lesser included offense as the defendant. *See Alberty*, 250 S.W.3d at 118. Because the evidence is clear that G.L. could not be an accomplice as a matter of law or fact due to his age, the trial court, as the sole fact finder, was under no obligation to decide whether G.L. was an accomplice witness. *Cocke,* 201 S.W.3d at 748.

For the foregoing reason, G.L. cannot be considered an accomplice to D.A.A. Therefore, his statement and testimony are not subject to the accomplice witness rule and do not require the support of corroborating evidence. We overrule D.A.A.'s first issue.

### III. WHETHER LOPEZ'S TESTIMONY WAS PROPERLY ADMITTED UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE

In his second issue, D.A.A. argues that Lopez's recitation of a statement made by G.L. should not have been admitted by the trial court because it does not satisfy the excited utterance exception to the hearsay rule.

**A. Applicable Law**

Hearsay is "a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). "Hearsay is not admissible except as provided by statute" or by the Texas Rules of Evidence. *Id.* at R. 802. One such exception is an excited utterance, which is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* at R. 803(2). The idea behind the excited utterance exception is that "when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)).

A trial court has discretion to allow the admission of an out-of-court statement if the court believes the statement was made under one of the exceptions to the hearsay rule. *Id.* (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995)). An appellate court will "review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard and will not reverse that decision absent a clear abuse of discretion." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008) (citing *Zuliani*, 97 S.W.3d at 595). "An abuse of discretion occurs 'only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Zuliani*, 97 S.W.3d at 595 (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

**B.    Analysis**

D.A.A. argues that G.L.'s statement to Lopez cannot be considered an excited utterance because G.L. made this statement days after the crime occurred; therefore, he

7

could not have been under the stress of excitement caused by witnessing the startling event.

### 1. G.L.'s Emotional State During His Statement

D.A.A. argues that G.L. was not dominated by emotion and fear stemming from allegedly witnessing the crime. The key determination in deciding whether a statement may be considered an excited utterance is "'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id.* at 596 (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9, 10 (Tex. Crim. App. 1994)). In other words, a reviewing court must determine whether the declarant's statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Id.* at 596 (quoting *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964)).

Lopez testified that G.L. was a frequent visitor to her home and that on one such visit, after G.L. saw Officer Ponce investigating Perez's property, G.L. was very upset. In fact, she stated that G.L. was crying, shaking, and more upset than she had ever seen him before. In this heightened emotional state, G.L. asked Lopez if a boy his age could go to jail and subsequently confessed to her that he was present at Perez's property when D.A.A. and Chris entered into and damaged the property. Given Lopez's personal relationship to five-year-old G.L. and her familiarity with his usual behavior and mannerisms, a reasonable fact finder could conclude from Lopez's testimony that G.L. was dominated by emotions and fear caused by witnessing the startling event when he made

8

this statement to Lopez.

### 2. Lapse in Time Between Event and G.L.'s Statement

D.A.A. also argues that even if G.L. was dominated by emotions and fear immediately after witnessing the crime, those emotions had subsided by the time G.L. made his statement to Lopez several days after the crime. A court may consider the lapse in time from the startling event to the statement to decide if the "declarant made an excited utterance or a deliberative statement." *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 (Tex. 2004) (citing *Truck Ins. Exch. v. Michling*, 364 S.W.2d 172, 174 (Tex. 1963)). However, a lapse in time is not dispositive but is merely a factor in considering whether a statement is admissible as an excited utterance. *Zuliani*, 97 S.W.3d at 596. Excited utterance statements do not need to be made immediately after the startling event has occurred. Instead, the court may review each case on its own circumstances without being restricted to a "definite and fixed limit of time." *Truck Ins. Exch.*, 364 S.W.2d at 174.

The record shows that G.L. was present at Perez's property when the startling event of the burglary of the building occurred. While G.L.'s statement to Lopez implicating D.A.A. was made several days after the crime occurred, this statement was made immediately after G.L. saw Ponce at Perez's property investigating the crime. It is reasonable to believe that seeing Ponce investigating the damage to Perez's property would have triggered G.L. to be dominated by his emotions stemming from the crime. Therefore, while G.L.'s statement to Lopez was made several days after the startling event, it was still made while G.L. was under the stress of excitement caused by the startling event and dominated by emotion and fear triggered by a subsequent startling event related to the burglary of the

9

building.  *See Harvey v. State*, 123 S.W.3d 623, 630 (Tex. App.–Texarkana 2003, pet. ref'd).

For these reasons, G.L.'s statement to Lopez qualifies as an excited utterance exception to the hearsay rule, and the trial court did not abuse its discretion in allowing Lopez to repeat G.L.'s statement implicating D.A.A.  We overrule D.A.A.'s second issue.

## IV.  LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

Finally, D.A.A. argues that the evidence presented at trial was neither legally nor factually sufficient to support the trial court's finding of "true" to the offense of burglary of a building, because the evidence did not prove each element of the offense beyond a reasonable doubt.

## A.      Standards of Review

In a review of the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational fact finder, considering the evidence and making any reasonable inferences therefrom, could have found the essential elements of the offense beyond a reasonable doubt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).  While we consider all evidence presented at trial, including both direct and circumstantial evidence, we do not reevaluate the evidence or substitute our own judgment in place of the fact finder's.  *See Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd) (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.

Crim. App. 1999)). Instead, if we find that any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt, we must defer to the fact finder's judgment and affirm. *See id*. at 821 (citing *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997)).

Legal "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person is guilty of burglary of a building if, without the effective consent of the owner, he entered a building or habitation and committed or attempted to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(3). Here, the State argued that D.A.A. satisfied the "committed or attempted to commit a felony" prong by committing felony criminal mischief. TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A) (Vernon Supp. 2008). D.A.A. committed criminal mischief if, without the effective consent of the owner, "he intentionally or knowingly damage[d] or destroy[ed] the tangible property of the owner," and "the amount of pecuniary loss [was] $1,500 or more but less than $20,000." *Id*. D.A.A. acted "intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct [if it was] his conscious objective or desire to engage in the conduct or cause the result." *Id*. § 6.03(a) (Vernon 2003).

In a factual sufficiency review, we review the evidence in a neutral light to determine "whether the evidence introduced to support the verdict [is] so weak that the [fact finder's] verdict is clearly wrong and manifestly unjust [or] whether, considering conflicting evidence, the [fact finder's] verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

11

In such a review, however, a reviewing court cannot simply substitute its own judgment on the facts in place of that of the fact finder's:

> [I]t is not enough that the appellate court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict.

*Id.* at 417. For a reviewing court to order a new trial based on a factual insufficiency of the evidence, there must be evidence in the record, when viewed objectively, that will support a conclusion that the great weight and preponderance of the evidence contradicts the fact finder's verdict. *Id.*

**B.    Discussion**

**1.    Weighing Conflicting Testimony**

D.A.A. argues that even if the court considers Lopez's recitation of G.L.'s excited utterance, G.L.'s own testimony should outweigh Lopez's version of the events. The primary substantive evidence at trial came from G.L. and Lopez. G.L.'s testimony conflicted with both itself and his excited utterance as recited by Lopez. In his statement to Lopez, G.L. admitted that D.A.A. and Chris had been in Perez's house, got into the house with a knife, and "messed up the wall" while D.A. was sick at home. However, while much of G.L.'s testimony at trial was that he did not remember what happened in the house, he testified that it was D.A. who was with Chris in Perez's house. Also, G.L. first testified that he did not see D.A.A. in the house but only heard his voice when D.A.A. told D.A. and Chris to leave. He then testified that he did see D.A.A. at Perez's house but that

12

D.A.A. did not damage the house himself.

G.L. later testified that the damage to the house as shown in Exhibits 1A through 26A was far worse than the "little holes" he saw in Perez's house, so the damage must have been caused by D.A. and Chris on a separate occasion, either before or after the time D.A.A. was present. Also, G.L.'s vague and confusing testimony was made over a year after the crime occurred. In contrast, Lopez's testimony was based on G.L.'s statement made immediately after he saw Ponce investigating the scene of the crime.

The record showed evidence that seemed to contradict G.L.'s testimony or give weight to Lopez's testimony. Officer Ponce testified that while he did not give Lopez details of the scene of the crime, Lopez was able to describe the scene accurately based on G.L.'s statement. Perez testified that he visited his house frequently, both before and after the crime, which makes G.L.'s testimony of D.A. and Chris causing the damage at a later date unlikely. Also, after Perez had his house repaired, he had an alarm installed. The alarm was triggered the very afternoon it was activated. Upon arriving at the property, Perez saw D.A.A., who commented to Perez that when he heard the alarm sound, he ran away.

As the exclusive trier of the facts, the trial judge determined the weight to be given to each witness's testimony and was free to accept or reject any portion of the witnesses' testimony and evaluate their credibility. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Mosley*, 983 S.W.2d at 254. Based on the confusion stemming from G.L.'s conflicting testimony, the length of time that elapsed from the time the crime was committed and G.L.'s testimony, and the circumstantial evidence coinciding with Lopez's testimony, a reasonable fact finder could have given more weight to Lopez's recitation of G.L.'s excited

13

utterance over G.L.'s own testimony.

## 2. Inferring Intent

D.A.A. finally argues that even if he was present at Perez's house at the time of the offense, the evidence is neither legally nor factually sufficient to prove he had the requisite intent of committing felony criminal mischief, a necessary element to burglary of a building. Whether D.A.A. had the requisite intent to commit felony criminal mischief was also a question of fact for the trial judge to determine based on the surrounding circumstances. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984) (citing *Stearn v. State*, 571 S.W.2d 177 (Tex. Crim. App. 1978)). "Intent may be inferred from acts, words and conduct of [the] accused." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Given that G.L. stated D.A.A. was present and "messed up the wall," it is reasonable for a fact finder to infer that D.A.A. participated in all of the destruction that occurred in Perez's home. The evidence in the record shows that the level of damage to the inside of the house was extensive and more than could be reasonably attributed to a mere accident. D.A.A.'s involvement in the crime, along with the level of destruction in Perez's house, is sufficient to allow a reasonable fact finder to infer that D.A.A. had the requisite intent to commit felony criminal mischief.

Reviewing the evidence in the light most favorable to the verdict, we hold that the evidence is such that a reasonable fact finder could have found the elements of burglary of a building beyond a reasonable doubt. *See Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Reviewing the evidence in a neutral light, we also hold that the evidence is sufficient to support each element of the offense of burglary of a building

14

beyond a reasonable doubt and that the fact finder's determination is not against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule D.A.A.'s final issue.

## V. CONCLUSION

Having overruled D.A.A.'s issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 6th day of August, 2009.