State’s Motion for Rehearing
Overruled, Opinion issued February 18, 2010 withdrawn; Reversed and Remanded
and Substitute Opinion on Rehearing filed April 29, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00763-CR

___________________

 

GEORGE Givens MILLER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the County Criminal Court at Law No. 2

Harris County, Texas



Trial Court Cause No. 1481830

 



 

 

SUBSTITUTE OPINION

            We
deny the State’s motion for rehearing, withdraw our opinion issued February 18,
2010, and issue this substitute opinion in its place.

            A
jury convicted George Miller of assaulting his son, Givens Miller.  See Tex.
Penal Code Ann. § 22.01 (Vernon Supp. 2009).  The jury sentenced him to one day
in jail, probated for thirty days.  On appeal, George contends the trial court
erred in denying his request for a jury instruction on the defense of consent. 
Finding error, we reverse and remand this cause to the trial court for
proceedings consistent with this opinion.

I.                  
Background

Givens, an
eighteen-year-old, 210-pound football player, had a disagreement with his
parents after one of his high-school football games.  During the disagreement,
George took away Givens’s cell phone and car keys.  Thereafter, Givens repeatedly
shouted expletives at his parents, such as “take your G.D. money and ‘f’
yourself with it.”  He then bowed up in close proximity to George and, in a
threatening tone, taunted him, saying “What the ‘f,’ man.  I’m going to—you
going to hit me, man?  Are you going to hit me?  What the ‘f,’ man.”[1] 


George replied, “No, I’m
not going to hit you,” and shoved Givens away from him.  At this point, Givens
kicked and punched George in his side, and then, as Givens charged him, George
punched Givens in the face.  George threw two more punches, and the altercation
ended.

            After
noticing Givens was bleeding from the mouth with several teeth loosened, George
placed him in the car with his mother and asked her to take him to the
hospital.  George, a doctor, left to perform surgery at a different hospital. 
The police pulled Givens and his mother over on a routine traffic stop while
they were on route.  The police inquired about the son’s condition, and Givens
told them he had been struck by his father.  The officers called E.M.S., and E.M.S.
personnel drove Givens the remaining distance to the hospital.  After
investigation, George was charged with the misdemeanor offense of assaulting a
family member.  

            At
trial, Givens testified that at the time of the incident he “was all jazzed up”
from the game and “in an aggressive mood.”  He acknowledged that his tone and
conduct was threatening, and he testified that he “kind of wanted to hit
[George]” and he “kind of wanted [George] to hit [him].”  When he described the
altercation, he testified that they “were . . . fighting” and the punches were
thrown “in the heat of combat.”  

At the close of evidence,
George objected to the jury charge because the court did not include an
instruction on the defense of consent.  The court denied his request for a
consent instruction and overruled his objection.  The jury convicted and
sentenced him to one day in jail, probated for thirty days.  

George contends the trial
court erred by denying his request for an instruction on the defense of
consent.  Specifically, George argues that the underlying evidence raised a
fact issue as to this defense.  We agree.

II.              
Discussion

A. 
Jury Instruction

The victim’s effective
consent or the actor’s reasonable belief the victim consented to the actor’s
conduct is a defense to assault if the conduct did not threaten or inflict
serious bodily injury.  Tex. Penal Code Ann. § 22.06(a)(1) (Vernon 2003).  An
accused has the right to an instruction on any defense raised by the evidence,
whether that evidence is weak or strong, unimpeached or contradicted, and
regardless of what the trial court thinks about the credibility of the
evidence.  Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). 
This rule was designed to ensure that the jury, not the judge, decides the
credibility of the evidence.  Id.; see Woodfox v. State, 742
S.W.2d 408, 409–10 (Tex. Crim. App. 1987).

1.     
  Consent

The evidence supporting a consent
defense may be presented by the State or defense counsel.  See Granger,
3 S.W.3d at 38 n.2; Woodfox, 742 S.W.2d at 409.  When considering
whether an instruction was warranted, we are concerned only with whether the
evidence supports the defense of consent, not whether the evidence is
believable.  See Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App.
1984).  If the evidence, viewed in a light favorable to the appellant, supports
the defense of consent, then an instruction is required.  See Granger, 3
S.W.3d at 38; Dyson, 672 S.W.2d at 463.  

The State urges us to
follow Allen v. State, 253 S.W.3d 260 (Tex. Crim. App. 2008).  In Allen,
the complainant taunted the defendant by stating, “‘go ahead,’ ‘come on,’ ‘slap
me,’ ‘hit me.’”  Allen, 253 S.W.3d at 267.  There the court stated,
“[c]ommon experience tells us that such apparent bravado . . . in the face of
an expressed threat does not normally communicate a genuine desire to be
assaulted; it far more likely constitutes a backhanded warning of potentially
dire consequences to the threatener should she actually carry out her threat.” 
 Id. at 268 (emphasis added).  However, the State fails to note that
the Allen court ultimately concluded that the underlying facts were
adequate to raise a fact issue relative to consent and require submission of
the issue to the jury.  There, the circumstances did not require reversal only
because the defendant’s counsel failed to preserve error.  Id.

Here, the evidence
indicates Givens may have genuinely desired to provoke his father to hit him.  Givens’s
testimony that he “kind of wanted [George] to hit [him]” gives life to the
argument that the fight was consensual.  Additionally, Givens did more than
threaten George; he struck the first blow.  It is important to note that Givens
was aggressively moving towards George when George finally hit Givens. 
Furthermore, Givens described the altercation with phrases indicative of mutual
combat, not assault.  He testified that he “was all jazzed up” and “in an
aggressive mood” and that when George hit him, they were “in the heat of
combat” and “still fighting.”

2.     
  Serious Bodily Injury

            The defense of consent is not available when the
defendant threatens or inflicts “serious bodily injury.”  See § 22.06(a)(1). 
Serious bodily injury is “injury that creates a substantial risk of death or
that causes death, serious permanent disfigurement, or protracted loss or
impairment of the function” of a bodily organ.  Tex. Penal Code Ann § 1.07(a)(46)
(Vernon Supp. 2009).  

            Texas courts have not been consistent as to what
specific facts constitute serious bodily injury.  Hays v. State, 480
S.W.2d 635, 637 (Tex. Crim. App. 1972).  Whether an injury constitutes serious
bodily injury is determined on a case-by-case basis.  Moore v. State,
739 S.W.2d 347, 349 (Tex. Crim. App. 1987).    When deciding whether the injury
rises to the level of serious bodily injury, we consider the extent of injury
at the time it was inflicted, not after the effects have been ameliorated or
exacerbated by medical treatment.  Goodman v. State, 710 S.W.2d 169, 170
(Tex. App.—Houston [14th Dist.] 1986, no pet.).  

Here,
Givens suffered dental fractures and loose teeth, but he lost no teeth.  He
also received two blows to the head, and he testified that he may have lost
consciousness for a brief moment.  However, he did not sustain memory loss. 
The emergency physician who treated Givens testified that a black-out could be
the result of many things, including shock or surprise.  He also testified no
damage appeared on Givens’s CAT scan.  Nevertheless, the doctor testified that,
because Givens lost consciousness, he likely suffered a mild concussion.

              Some courts have concluded, on a case-by-case
basis, that  loss of teeth is a serious bodily injury in cases with and
without other injuries.  See, e.g., Hatfield v. State, 377 S.W.2d 647,
649 (Tex. Crim. App. 1964); Lenzy v. State, 689 S.W.2d 305, 310 (Tex.
App.—Amarillo 1985, no pet.).  To date, courts have concluded that the loosening
of teeth is a serious bodily injury only when accompanied by other serious
injuries.  See, e.g., Hawkins v. State, 29 S.W.2d 384, 386 (Tex. Crim.
App. 1930) (defendant struck complainant with an axe, crushed his nose flat,
knocked four teeth loose, and pulled ears with pliers leaving a one and
one-half inch incision behind ear); Pitts v. State, 742 S.W.2d 420, 422
(Tex. App.—Dallas 1987, no pet.) (profuse bleeding, misalignment of teeth,
inability to breath normally, and fractured jawbone, cheekbone, orbital bones,
and nasal bones).  

Blows to
the head, depending on the strength and repetitiveness of the blows, can, but
do not always, constitute serious bodily injury.  See Sanchez v. State,
543 S.W.2d 132, 134 (Tex. Crim. App. 1976); Hays, 480 S.W.2d at 637;
Gonzales v. State, 191 S.W.3d at 753; Powell v. State, 939 S.W.2d
713, 718 (Tex. App.—El Paso 1997, no pet.).  Some courts have held that memory
loss is sufficient to constitute serious bodily injury, while others have not. 
See, e.g., Powell, 939 S.W.2d at 718 (concussion that
caused memory loss was sufficient); Sanchez, 543 S.W.2d at 134
(temporary amnesia, or a momentary loss of memory, was not sufficient).  

Here,
Givens’s teeth were loosened, but not lost, and he may have had a mild concussion.
 The State did not specifically contend below that Givens’s injuries constituted
“serious bodily injury.”  Even had it done so, in light of current precedent,
the question still would be a question of fact for the jury to decide.  See Allen,
253 S.W.3d at 267; Saxton v. State, 804 S.W.2d 910, 913–14 (Tex. Crim.
App. 1991); Gray v. State, 82 S.W.2d 958, 959 (Tex. Crim. App. 1935).[2]

Viewing the evidence in a
light favorable to George, we hold an instruction on the defense of consent was
required.  See Granger, 3 S.W.3d at 38.  Whether Givens actually
consented was a question of fact for the jury.  See id.  Accordingly,
the trial court erred in overruling George’s objection and denying his request
for an instruction on consent.  

B. 
Harmful Error

            Where
appellant properly objected to a jury charge error in the trial court, reversal
is required unless the error is harmless.  Almanza v. State, 724 S.W.2d
805, 806 (Tex. Crim. App. 1986) (en banc).  Here, George made a timely and
proper objection.  Therefore, he need only show he suffered some harm as a
result of the error.  See id.

            To
resolve whether George suffered harm, we consider the plausibility of the
evidence raising the defense.  See id.  Here, under these very unusual
circumstances, a reasonable factfinder might conclude that Givens consented to
the fight, or that George reasonably believed he consented.  Whether Givens
actually consented, of course, is a question of fact for the jury.  See Allen,
253 S.W.3d at 268.  Therefore, we conclude that failure to include the
instruction on consent was harmful error, and we sustain Appellant’s sole issue
on appeal.  See Almanza, 724 S.W.2d at 806.  

III.           
Conclusion

            Having sustained
appellant’s sole issue, we reverse and remand this cause to the trial court for
further proceedings consistent with this opinion.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Sullivan.

Publish
— Tex. R. App. P. 47.2(b).









[1] In an affidavit filed
with the trial court, Givens expanded on his provocation of his father.  Givens
swore that after his father took his phone and keys, he “got angry and said
‘This is out of control[,]’ . . . ‘F*** you[,]’ and some other inappropriate
words to [his] father and mother.”  He also provoked his father, “Come on, hit
me, go ahead and hit me.”  Givens also admitted “[he] instigated . . . the
situation” and described the altercation as a “fight,” not an assault.





[2] The consent
defense statute is unusual in that it seems to focus on outcome rather than
only intent.  See § 22.06(a)(1) (“The victim’s effective consent . . . is
a defense . . . if the conduct did not threaten or inflict serious
bodily injury.”).  While focusing on the outcome works to distinguish simple
assault from aggravated assault, it poses a problem when applied to consent.  See
Landrian v. State, 268 S.W.3d 532, 543 (Tex. Crim. App. 2008). 
Essentially, it can have the effect of disabling one’s consent altogether.  For
instance, A & B, two grown men, consent to a fist fight.  A, not intending
to cause serious bodily injury, throws a punch breaking B’s nose or
knocking out B’s tooth.  Though A has played by the terms to which both parties
consented, a jury could conceivably decide B’s injury is a “serious bodily
injury.”  In that case, A could be deprived of an otherwise legitimate defense
of consent and, therefore, guilty of legal assault.  Thus, under the statute,
the same conduct, depending on outcome, could potentially produce two different
legal results.